# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2839

_____

Earl Ringo, Jr.; Russell Bucklew; Leon    *
Taylor; John E. Winfield; Roderick    *
Nunley; John C. Middleton; Jeffrey R.    *
Ferguson; Allen L. Nicklasson; Joseph    *
Franklin; Mark Christeson; William L.    *   Appeal from the United States
Rousan; David Barnett; Cecil Clayton;    *   District Court for the Western
Michael Anthony Taylor; Herbert    *   District of Missouri.
Smulls; David Zink,    *
   *
       Appellants,    *
   *
     v.    *
   *
George A. Lombardi; Terry Russell;    *
John Doe,    *
   *
       Appellees.    *

_____

Submitted: March 15, 2012
Filed: May 8, 2012

_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Appellants are Missouri state prisoners convicted of first-degree murder and sentenced to death. George A. Lombardi is the Director of the Missouri Department of Corrections (DOC) and is ultimately responsible for executions in Missouri.

Lombardi oversees and supervises the execution process, and has authority to change the type and dosage of drugs used in Missouri's lethal-injection protocol. Terry Russell is the Warden of the Eastern Regional Diagnostic and Correctional Center where the executions are performed.

Missouri's lethal-injection protocol involves administering three drugs: sodium thiopental to anesthetize the prisoner and render him unconscious, pancuronium bromide to paralyze him and stop his breathing, and potassium chloride to stop the prisoner's heart. On December 2, 2010, appellants filed suit in the district court seeking a declaration that Missouri's lethal-injection protocol violates the Controlled Substances Act (CSA), 21 U.S.C. § 801 et seq., and the Federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 301 et seq. Appellants also requested "an injunction prohibiting [Lombardi and the other appellees] from carrying out executions in a manner that violates these statutes."

On August 15, 2011, the district court granted appellees' summary judgment motion, concluding appellants lacked standing under Article III of the United States Constitution because they failed to "demonstrate a cognizable injury in fact." Appellants appeal from the district court's final order and judgment. We conclude the case is moot, and we reverse and vacate the district court's judgment.

## I. DISCUSSION

"The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy." Preiser v. Newkirk, 422 U.S. 395, 401 (1975). "The express limitation of the Declaratory Judgment Act to cases 'of actual controversy' is explicit recognition of this principle." Golden v. Zwickler, 394 U.S. 103, 110 (1969) (quoting 28 U.S.C. § 2201). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Preiser, 422 U.S. at 401.

"When a case on appeal no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it." Neighborhood Transp. Network, Inc. v. Pena, 42 F.3d 1169, 1172 (8th Cir. 1994). "As mootness relates to justiciability and our power to hear a case, 'we must consider it even though the parties have not raised it.'" Bacon v. Neer, 631 F.3d 875, 877 (8th Cir. 2011) (quoting Olin Water Servs. v. Midland Research Labs., Inc., 774 F.2d 303, 306 n.3 (8th Cir. 1985)).

"[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.'" Preiser, 422 U.S. at 401 (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971) (per curiam)).

> To be cognizable in a federal court, a suit must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Rice, 404 U.S. at 246 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937) (internal marks omitted)).

> The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).  "Because the test to determine the existence of a 'substantial controversy' is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis." Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993).

Our review of the unusual circumstances in this appeal reveals no controversy of sufficient immediacy and reliability to warrant declaratory relief.  In challenging Missouri's lethal-injection protocol, appellants assert appellees violate the CSA and FDCA both through the means by which they obtain lethal-injection drugs, including sodium thiopental, and the manner in which they administer the drugs.

Appellants' claims are very specific about the drugs in the current protocol and the potential harm appellants could suffer as a result of the improper administration of those drugs.  For example, appellants maintain Missouri's protocol violates federal law because it "inalterably requires the use of sodium thiopental as the anesthetic, but without the prescription required by the statutes at issue."  In describing the risk of harm, appellants' expert opined the lay administration of sodium thiopental "creates a gratuitous and substantial risk . . . the execution will be agonizing."

But the circumstances have changed considerably since appellants filed their complaint on December 2, 2010.  Hospira, Inc., Missouri's supplier of sodium thiopental, no longer produces the drug, leaving no domestic manufacturer. Appellants do not dispute Missouri's limited supply of sodium thiopental expired March 1, 2011, and has not been replenished or substituted.  The DOC is unable to carry out the challenged protocol as written, and it appears unlikely it ever will.

Even before Hospira stopped manufacturing sodium thiopental, a nationwide shortage of the drug forced several states to try to import the drug or alter their lethal-injection protocols.  Appellants state "[m]any states have changed their execution protocols" and substituted pentobarbital as a result of Hospira's withdrawal.

Appellees report "there is great difficulty importing" sodium thiopental, and the record indicates the United States Drug Enforcement Agency denied one state department of corrections' request for a waiver to allow it to import sodium thiopental for executions.

On March 27, 2012, a federal district court in the District of Columbia concluded the FDCA required the United States Food and Drug Administration (FDA) to block the importation of sodium thiopental into the United States because the FDA never approved the drug. See Beaty v. FDA, Civil No. 11-289, 2012 WL 1021048, at *6, 8 (D.D.C. Mar. 27, 2012). The court separately ordered the FDA (1) "immediately notify any and all state correctional departments which it has reason to believe are still in possession of any foreign manufactured [sodium] thiopental that the use of such drug is prohibited by law and that, that [sodium] thiopental must be returned immediately to the FDA"; and (2) "be permanently enjoined from permitting the entry of, or releasing any future shipments of, foreign manufactured [sodium] thiopental into interstate commerce."

The DOC reports it is "making efforts to obtain drugs of some sort," but "not necessarily [sodium] thiopental." On August 11, 2011, the DOC unsuccessfully attempted to obtain pentobarbital, a drug for which appellants admit there is no evidence in the record. Despite its efforts, the DOC has been unable to obtain sodium thiopental or a substitute for more than a year, and appellees cannot provide this court with a time frame for resolving this issue. Appellees aver there is "no reason to believe that [the DOC] will come back with the same drugs or the same protocol."

Appellants concede the factual developments in the case permit a reasonable inference that Missouri will change the protocol and the drugs used. Appellants speculate, "The state may indeed obtain a different drug. It may be a very similar drug. It may be a drug whose application and means of administration violates the same statute in similar ways."

Appellants' speculation illustrates the difficulty the court would have reviewing a claim in which the factual circumstances are fluid and do not present a concrete and definite controversy. How do we meaningfully evaluate whether the means by which the DOC obtains its lethal-injection drugs violate the CSA and FDCA when the DOC presently has no means of obtaining at least one of the drugs? And how can appellees violate federal law in administering the lethal-injection drugs, as specified by the challenged protocol, when the DOC has no sodium thiopental and has no identifiable means to obtain it?

If the DOC does indeed obtain a different drug or otherwise modifies its protocol, any analysis we would conduct based on the existing protocol and the use of sodium thiopental as an anesthetic would become merely an academic exercise. See Cooey v. Strickland, 588 F.3d 921, 923 (6th Cir. 2009) (holding Ohio's amendment to its lethal-injection protocol mooted a death-row inmate's challenge to the prior protocol). While any replacement drug the DOC might obtain may be similar—it also may not. We cannot know until the drug is acquired. "[S]uch speculative contingencies afford no basis for our passing on the substantive issues the appellants would have us decide." Hall v. Beals, 396 U.S. 45, 49 (1969) (per curiam).

The barriers and uncertainty facing Missouri's lethal-injection protocol deprive appellants' claims of the immediacy and the reality required to establish "a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Id. at 48. Appellants' claims are moot.

We also reject appellants' contention that their claims fall within the limited exception to mootness for claims that are capable of repetition, yet evading review. "To come within this narrow exception, the following two elements must exist: (1) there must be a reasonable expectation that the same complaining party will be subjected to the same action again, and (2) the challenged action must be of a duration

too short to be fully litigated before becoming moot." <u>Iowa Prot. & Advocacy Servs. v. Tanager, Inc.</u>, 427 F.3d 541, 544 (8th Cir. 2005). Neither element exists here.

First, given the difficulty the DOC is having obtaining sodium thiopental, appellants fail to show a reasonable expectation the DOC will obtain sodium thiopental and resume executing prisoners without making any changes to its lethal-injection protocol. "A mere 'physical or theoretical possibility' is insufficient; a 'demonstrated probability' must be shown." <u>McFarlin v. Newport Special Sch. Dist.</u>, 980 F.2d 1208, 1211 (8th Cir. 1992) (quoting <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982) (per curiam)).

Second, the duration of the alleged violations is not so short that "a similar future action could not be fully litigated before the case becomes moot." <u>Iowa Prot. & Advocacy Servs.</u>, 427 F.3d at 544. Several circuits have fully litigated state prisoner challenges to changes in lethal-injection protocols based on the substitution of another drug for sodium thiopental. <u>See</u>, <u>e.g.</u>, <u>Jackson v. Danberg</u>, 656 F.3d 157, 160, 164 (3d Cir. 2011) (noting "each court to consider this issue has uniformly held that the use of pentobarbital in lieu of sodium thiopental [in a lethal-injection protocol as a result of the nationwide shortage of sodium thiopental] is constitutional"); <u>Powell v. Thomas</u>, 641 F.3d 1255, 1258 (11th Cir. 2011) (per curiam) (holding "[t]he replacement of sodium thiopental with pentobarbital does not constitute a significant alteration in the [Alabama Department of Corrections'] lethal injection protocol"); <u>Pavatt v. Jones</u>, 627 F.3d 1336, 1338, 1340 (10th Cir. 2010) (rejecting an Eighth Amendment challenge to Oklahoma's lethal-injection protocol based on the state's planned substitution of pentobarbital for sodium thiopental).

Whether Missouri follows the path of other states and alters its lethal-injection protocol or somehow obtains a supply of sodium thiopental and resumes executions under its existing protocol, we are not persuaded any claim appellants might file in the future will necessarily evade review. <u>See</u> <u>Hickman v. Missouri</u>, 144 F.3d 1141, 1143

(8th Cir. 1998) (explaining "the proper inquiry is whether the [challenged] activity is *by its very nature short in duration*") (quoting <u>Clark v. Brewer</u>, 776 F.2d 226, 229 (8th Cir. 1985) (internal quotation marks omitted)); <u>see</u> <u>also</u> <u>Spencer v. Kemna</u>, 523 U.S. 1, 18 (1998) (holding the exception did not apply because the petitioner failed to show the duration of the challenged activity was "*always* so short as to evade review") (emphasis added).

## II.    CONCLUSION

We reverse and vacate the judgment of the district court as moot and remand with directions to dismiss the complaint, without prejudice.

_____