# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3699

_____

In re: George A. Lombardi,

*Petitioner*.

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: January 17, 2014
Filed: January 24, 2014

_____

Before RILEY, Chief Judge, WOLLMAN, LOKEN, MURPHY, BYE, SMITH, COLLOTON, GRUENDER, SHEPHERD, and KELLY, Circuit Judges, En Banc.[1]

_____

COLLOTON, Circuit Judge, with whom RILEY, Chief Judge, and WOLLMAN, LOKEN, SMITH, GRUENDER, and SHEPHERD, Circuit Judges, join.

George Lombardi, Director of the Missouri Department of Corrections, petitions for a writ of mandamus or prohibition directed to the district court in an underlying civil action concerning Missouri's method for carrying out the death penalty. *See Zink v. Lombardi*, No. 2:12-cv-04209 (W.D. Mo. filed Aug. 1, 2012). Lombardi seeks to prohibit the district court from enforcing orders that Lombardi must disclose in civil discovery, for use by opposing counsel, the identities of (1) the

_____

[1]Judge Benton did not participate in the consideration or decision of this matter.

physician who prescribes the chemical used in Missouri executions, (2) the pharmacist who compounds the chemical, and (3) the laboratory that tests the chemical for potency, purity, and sterility. Citing reports that "many manufacturers and suppliers have barred the use of drugs used for executions or refused, under pressure from death-penalty opponents, to sell or manufacture drugs for use in execution," the Director avers that disclosure of these identities "would prevent the Department from obtaining lethal chemicals needed to perform its state obligations." R. Doc. 189-1, at 2. Consistent with the Director's affidavit, the plaintiffs themselves allege that maintaining confidentiality of the identities "prevents the suppliers' associations, customers, and prescribing or referring physicians from censuring or boycotting them," and unreasonably restricts the associations of health-care professionals "from de-certifying or otherwise censuring them or boycotting them." R. Doc. 183, at 94-95.

A three-judge panel of this court granted a writ with respect to discovery of the identity of the physician, but denied a writ as to discovery of the identities of the pharmacy and the laboratory. On rehearing en banc, we conclude that a writ should issue to vacate the orders requiring discovery of all three identities.

I.

A.

In Missouri, first-degree murder is punishable by death or life imprisonment. Mo. Rev. Stat. § 565.020.2. When the trial court imposes a penalty of death, Missouri law provides that "[t]he manner of inflicting the punishment of death shall be by the administration of lethal gas or by means of the administration of lethal injection." Mo. Rev. Stat. § 546.720.1. The statute further authorizes the Director to provide "the necessary appliances for carrying into execution the death penalty by means of the administration of lethal gas or by means of the administration of lethal

injection." *Id.* State law thus places the matter of selecting a lethal-injection protocol in the discretion of the Director. *Taylor v. Crawford*, 487 F.3d 1072, 1081 (8th Cir. 2007). The governing statute also provides that the Director will select an "execution team," consisting of "those persons who administer lethal gas or lethal chemicals" and "those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals." Mo. Rev. Stat. § 546.720.2.

As of 2010, Missouri's lethal-injection protocol involved the administration of three drugs: "sodium thiopental to anesthetize the prisoner and render him unconscious, pancuronium bromide to paralyze him and stop his breathing, and potassium chloride to stop the prisoner's heart." *Ringo v. Lombardi*, 677 F.3d 793, 795 (8th Cir. 2012). But Missouri's supply of sodium thiopental expired on March 1, 2011, and the State was unable to acquire more of the drug. The only domestic manufacturer of sodium thiopental had ceased to produce it, and the Food and Drug Administration had not approved the drug for importation. *Id.* at 797. In late 2011, moreover, the European Union announced strict regulations on the export of sodium thiopental to countries that authorize the death penalty. Press Release, European Commission, Commission Extends Control over Goods Which Could Be Used for Capital Punishment or Torture (Dec. 20, 2011), *available at* http://europa.eu/rapid/press-release_IP-11-1578_en.pdf (last visited Jan. 24, 2014).

In light of these developments, Director Lombardi issued a new execution protocol in May 2012 that called for the injection of two grams of propofol. R. Doc. 133-1. In October 2013, however, "in light of the issues that have been raised surrounding the use of propofol in executions," Governor Nixon directed the Department of Corrections to modify the execution protocol to employ a different form of lethal injection. R. Doc. 183-1. The "issues" raised in the public domain included the potential that if propofol were used in lethal injections, then the European Union would forbid or restrict the exportation of propofol to the United States, and the drug would be unavailable for continued use in this country as a

-3-

common anesthetic in surgical procedures. *See, e.g.*, R. Doc. 126, at 4; R. Doc. 126-1, at 3-4; R. Doc. 126-3, at 2-3; Mo. Soc'y of Anesthesiologists, Statement on the Use of Propofol in Lethal Injections (Sept. 2013), *available at* http://www.msahq.com/wp-content/uploads/2013/09/MSA-Statement-on-Use-of-Propofol-in-Lethal-Injections.pdf (last visited Jan. 24, 2014).

In response, the Director changed the lethal-injection protocol on October 18, 2013. The new protocol eliminates the use of propofol and provides for the injection of five to ten grams of pentobarbital. R. Doc. 144, at 1; R. Doc. 144-1, at 1. The Department also announced that it had added a compounding pharmacy to its execution team, and that the pharmacy would be responsible for providing pentobarbital for executions carried out under the new protocol. R. Doc. 183-3. Missouri applied the October 2013 protocol in the executions of Joseph Paul Franklin on November 20, 2013, and Allen Nicklasson on December 11, 2013.

B.

The litigation underlying the petition for writ of mandamus began in June 2012 and was removed to federal court in August 2012. A group of prisoners sentenced to death in Missouri sued the Director, seeking a declaration that the lethal-injection protocol using propofol was unconstitutional. The complaint alleged that the protocol violated the Eighth and Fourteenth Amendments of the Constitution of the United States and the comparable prohibition on cruel and unusual punishment in the Missouri Constitution, the Ex Post Facto Clauses of the federal and state constitutions, the Supremacy Clause of the federal Constitution, and the separation of powers guaranty of the Missouri Constitution. R. Doc. 1-1; R. Doc. 1-2. On the Director's motion to dismiss the complaint, the district court allowed the claims based on the Eighth Amendment and the Ex Post Facto Clauses to proceed, but dismissed the others for failure to state a claim. R. Doc. 31.

After the Director modified the lethal-injection protocol in October 2013 to eliminate propofol and to use pentobarbital, the Director moved to dismiss the complaint for lack of jurisdiction. The district court denied the motion, reasoning that despite the change in lethal-injection protocol, "there is clearly an overarching controversy concerning the Department's method of execution," and that even if the complaint were dismissed, the plaintiffs "could and would immediately file a new lawsuit alleging violations involving the latest version of the protocol." R. Doc. 163, at 3. The court concluded that even if the plaintiffs were required to file a new lawsuit, "[t]he same controversy would remain: whether the Department's current execution protocol is in violation of the Eighth Amendment." *Id.*

On November 26, 2013, the district court granted the plaintiffs leave to file an amended complaint alleging violations of several federal and state constitutional, statutory, and regulatory provisions. Although this court recently had vacated the district court's order staying the execution of Joseph Paul Franklin based on challenges to the method of execution, *Zink v. Lombardi*, No. 13-3505, Order (8th Cir. Nov. 19, 2013), *vacating* R. Doc. 163, the district court ruled that the proposed amendment was not futile, because this court's decision in Franklin's case did not mean that the plaintiffs could never develop sufficient evidence to support their claims with adequate discovery procedures. R. Doc. 181. On December 3, 2013, the plaintiffs filed an amended complaint that challenged the current protocol and the use of pentobarbital. R. Doc. 183.

The discovery orders at issue here were entered on December 12, 2013. Having denied the Director's motion to dismiss the original complaint, rejected the Director's contention that amendment of the complaint would be futile, and disagreed with the Director's invocation of an evidentiary privilege, the district court ordered the Director to disclose to counsel for the plaintiffs, no later than December 16, the identities of the physician who provides a prescription for the compounded pentobarbital, the pharmacist who compounds the pentobarbital used in executions,

and the laboratory that tests the compounded drug. R. Doc. 203; R. Doc. 204. The district court also denied the Director's motion for a protective order regarding members of the execution team. R. Doc. 205.

The district court permitted only two attorneys for the plaintiffs to learn the identities and required those attorneys to "refrain from directly identifying to any other person the pharmacist, physician, or laboratory as individuals who are assisting the state in the execution of prisoners." R. Doc. 203. Counsel for the plaintiffs, however, expressed concern that it could be very difficult to investigate the physician, pharmacist, and laboratory without disclosing their roles in the execution process, and suggested there were "many ways in which investigating the pharmacy might place the pharmacy's identity, status, and role at issue before whoever we would be talking to." R. Doc. 224, at 14-16. The district court acknowledged that "it may be that there's just no way given the circumstances to keep it confidential because of the central nature of these people to the current dispute," and asked only that counsel keep the identities confidential, "other than as needed to do the investigation." *Id*. at 16.

The Director then petitioned this court for a writ of mandamus or prohibition that would prohibit the district court from enforcing the three disputed orders. Late in the afternoon on December 16, the district court denied the Director's motion for a stay of the discovery orders pending a decision from this court. The Director promptly moved for a stay in this court. On December 17, the Director delivered to the district court (but not to opposing counsel) a document identifying the prescribing physician, compounding pharmacy, and testing laboratory. Later that day, this court granted a temporary stay of the district court's orders.

On December 27, a three-judge panel of this court (Bye, Gruender, and Kelly, JJ.) granted a writ of mandamus and prohibited the district court from ordering the Director to disclose the identity of the prescribing physician. The panel denied,

however, the petition for writ of mandamus as to discovery of the identities of the compounding pharmacy and the testing laboratory. The panel dissolved the temporary stay entered on December 17 and issued the mandate immediately. The district court then ordered the Director to disclose to opposing counsel the identities of the compounding pharmacist and the testing laboratory by 5:00 p.m. on December 27. The Director promptly petitioned this court for rehearing en banc. He also moved this court to recall the mandate and to stay temporarily the district court's discovery orders pending disposition of the petition for rehearing. The Director informed the district court of these filings and again provided the identities of the compounding pharmacy and testing laboratory to the district court, but not to opposing counsel.

The three-judge panel denied the motions to recall the mandate and for temporary stay by a vote of 2-1, with Judge Gruender dissenting. The full court, on its own initiative, ordered rehearing en banc of the motions by a vote of 7-2, with two judges not participating, and then granted both motions. The clerk entered the appropriate orders on this court's docket by 7:36 p.m. on December 27.

There followed some unusual procedural developments. On Saturday, December 28, the district court entered an order stating that no stay of the district court's order of December 27 had been issued by the Eighth Circuit, and that the district court, "exercising its inherent authority to protect the jurisdiction of the Court and to ensure fairness, has sent to Cheryl Pilate and Joe Luby [counsel for the plaintiffs] the information voluntarily provided to the Court by the Defendants." R. Doc. 242, at 2. This information included the identities of the compounding pharmacy and the testing laboratory. Later that day, however, the district court entered a second order stating:

> Since entering its Order, [Doc. 242], the Court learned that the Eighth
> Circuit stayed its judgment filed on December 27, 2013. In light of this

stay, Ms. Pilate and Mr. Luby have been instructed to take no action concerning the information provided them until a phone conference can be arranged with the parties at the earliest possible time.

R. Doc. 243.

On December 30, the district court convened a telephone conference and ordered Ms. Pilate and Mr. Luby "to completely delete the email sent by the Court from their system and to delete any information obtained from that email from their files." R. Doc. 251. The court further ordered that counsel and their staff "are . . . not to disclose the information provided in the email, are not to conduct investigations regarding the contents of the email, and are ordered to delete any trace of the contents of the emails and of the information contained within it." *Id.* The Director moved during the telephone conference for recusal of the district judge. The district judge later entered an order recusing herself from further proceedings in this matter, R. Doc. 253, and the case was reassigned to another district judge. R. Doc. 254.

II.

The principal matter before the en banc court is Director Lombardi's petition for a writ of mandamus to prohibit the district court from enforcing its orders that the Director disclose to opposing counsel the identities of the physician who prescribes the pentobarbital used in Missouri executions, the pharmacist who compounds the chemical, and the laboratory that tests the chemical for potency, purity, and sterility. Although the district court disclosed to counsel for plaintiffs the identities of the pharmacist and laboratory on December 28, despite this court's entry of a temporary stay on December 27, the petition is not moot. The Director has not disclosed the identities to opposing counsel, and the district court took remedial action to foreclose use of the information that the court disclosed to counsel. There is still a live

-8-

controversy over whether the Director must disclose the identities for active use by opposing counsel.

Extraordinary writs like mandamus are "useful safety valves for promptly correcting serious errors," *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (internal quotation and alteration omitted), but "only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion" will justify the invocation of the extraordinary remedy of mandamus. *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (internal quotations and citation omitted). To obtain a writ of mandamus, the petitioning party must satisfy the court that he has "no other adequate means to attain the relief he desires," and that his entitlement to the writ is "clear and indisputable." *Id.* at 380-81 (internal quotations omitted). "[I]f the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.

In a summary order, the three-judge panel issued a writ of mandamus to prohibit the district court from enforcing its order to disclose the identity of the prescribing physician, but denied the Director's request to prohibit disclosure of the pharmacy and testing laboratory. In his petition for rehearing, the Director urged two principal reasons why a writ should issue not only as to the physician's identity, but to prohibit discovery of all three identities.

First, the Director relies on his invocation of a privilege to protect information designated as confidential by Missouri statute or common law. *See generally* Fed. R. Evid. 501; *In re Hampers*, 651 F.2d 19, 21-23 (1st Cir. 1981); *Am. Civil Liberties Union of Miss., Inc. v. Finch*, 638 F.2d 1336, 1343-44 (5th Cir. Unit A Mar. 1981). Throughout this litigation, the Director has urged that the Department properly designated the physician, pharmacist, and laboratory as part of its "execution team," and has relied on a state statute that says "identities of members of the execution

team, as defined in the execution protocol of the department of corrections, shall be kept confidential." Mo. Rev. Stat. § 546.720.2. On this basis, the Director contends that the information is privileged from disclosure. *See generally* Model Code of Evidence, Rule 228 (1942); *Taylor v. Nix*, 451 F. Supp. 2d 1351, 1352-54 (N.D. Ga. 2006). The Director also has adverted, *e.g.*, R. Doc. 224, at 8-9, to common law privileges that apply independent of any statute that specifically requires confidentiality. *See generally State ex rel. Mo. Ethics Comm'n v. Nichols*, 978 S.W.2d 770, 773 (Mo. Ct. App. 1998); *Pack v. Beyer*, 157 F.R.D. 226, 231-33 (D.N.J. 1994). Second, the Director argues that the plaintiffs in the underlying litigation have failed to state a claim as to which discovery of the identities is relevant, and that the discovery of such sensitive information is therefore unjustified. *See* Fed. R. Civ. P. 26(b)(1).

In addition to these arguments on the merits, the Director asserts that no other adequate means is available to attain the requested relief. He argues that if discovery proceeds and an appeal is allowed only after judgment, then it is likely that active investigation of the physician, pharmacy, and laboratory will lead to further disclosure of the identities. These disclosures, he contends, would trigger collateral consequences that would prevent the Director from obtaining the lethal chemicals necessary to carry out the capital punishment laws of the State. He cites, as an example, a letter dated October 2013 from a compounding pharmacy in Texas that demanded the Texas Department of Criminal Justice return a supply of compounded pentobarbital sold for use in executions, because of a "firestorm," including "constant inquiries from the press, the hate mail and messages," that resulted from publication of the pharmacy's identity. R. Doc. 189-1, at 6-7. *See Landrigan v. Brewer*, 625 F.3d 1132, 1143 (9th Cir. 2010) (Kozinski, C.J., dissenting from denial of rehearing en banc) ("Certainly Arizona has a legitimate interest in avoiding a public attack on its private drug manufacturing sources . . . .").

The privilege issues are significant and complex, but we express no view on them, because it is clear and indisputable that the discovery ordered by the district court is not relevant to any claim that should survive a motion to dismiss, and that the Director has no other adequate means to attain the relief he desires. Although denial of a motion to dismiss ordinarily is not appealable, a writ of mandamus to correct an erroneous denial may be warranted in extraordinary circumstances where continued litigation would have significant unwarranted consequences. *See Abelesz v. OTP Bank*, 692 F.3d 638, 650-53 (7th Cir. 2012). Discovery orders likewise are not ordinarily appealable, but mandamus may issue in extraordinary circumstances to forbid discovery of irrelevant information, whether or not it is privileged, where discovery would be oppressive and interfere with important state interests. *See Sanderson v. Winner*, 507 F.2d 477, 479-80 (10th Cir. 1974). These propositions taken together, along with the unavailability of alternative means for the Director to attain relief, lead us to conclude that a writ should issue.

The plaintiffs' principal claim in the underlying litigation is based on the Eighth Amendment. Our analysis must begin with a basic proposition: "[C]apital punishment is constitutional. It necessarily follows that there must be a means of carrying it out." *Baze v. Rees*, 553 U.S. 35, 47 (2008) (plurality opinion) (citation omitted). Any allegation that all methods of execution are unconstitutional, therefore, does not state a plausible claim under the Eighth Amendment.

The plaintiffs complain that Missouri's use of compounded pentobarbital in its execution protocol creates a substantial risk of severe pain or an objectively intolerable risk of severe pain, and thus constitutes cruel and unusual punishment in violation of the Eighth Amendment. In furtherance of that claim, they seek to investigate the physician, pharmacy, and laboratory involved in the execution process. But the plaintiffs do not allege that the risk of harm arising from the State's current lethal-injection protocol is substantial when compared to known and available alternatives. They do not allege that a different lethal-injection protocol, or a

-11-

different method of execution (*e.g.*, lethal gas, electrocution, or firing squad), is more humane. In denying a motion to dismiss the original complaint, and thus allowing discovery to proceed, the district court ruled that "Plaintiffs are not required to propose an alternative method of execution as an element of their Eighth Amendment claim." R. Doc. 31, at 7.

In our view, this is a plain misreading of the Supreme Court's decision in *Baze v. Rees* and the Eighth Amendment. Where, as here, there is no assertion that the State acts purposefully to inflict unnecessary pain in the execution process, the Supreme Court recognized only a limited right under the Eighth Amendment to require a State *to change* from one feasible method of execution to another. The controlling opinion of the Chief Justice in *Baze* provides that if a State refuses to adopt a readily available alternative method of execution that would significantly reduce a substantial risk of severe pain, then "a State's refusal *to change its method* can be viewed as 'cruel and unusual' under the Eighth Amendment." 553 U.S. at 52 (plurality opinion) (emphasis added). In sum: "A stay of execution may not be granted on grounds such as those asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. *He must show that the risk is substantial when compared to the known and available alternatives.*" *Id*. at 61 (emphasis added). The concurring opinions in *Baze* reflect the same understanding. *Id*. at 63 (Alito, J., concurring) (explaining that the plurality opinion "concludes that 'a State's refusal to change its method [of execution] can be viewed as "cruel and unusual" under the Eighth Amendment' *if the State, 'without a legitimate penological justification,' rejects an alternative method that is 'feasible' and 'readily' available and that would 'significantly reduce a substantial risk of severe pain'*") (alteration in original) (emphasis added) (quoting *id*. at 52 (plurality opinion)); *id*. at 94 (Thomas, J., concurring in the judgment) ("As I understand it, [the plurality] opinion would hold that a method of execution violates the Eighth Amendment if it poses a substantial risk of severe pain *that could be significantly reduced by adopting readily available alternative procedures*.")

-12-

(emphasis added); *see also Raby v. Livingston*, 600 F.3d 552, 560-61 (5th Cir. 2010) ("Because we find that Raby has failed to establish that the Texas lethal injection protocol creates a demonstrated risk of severe pain, *we do not reach the second step of the* Baze *test, whether the risk created by the current protocol is substantial when compared to the known and available alternatives*.") (emphasis added); *Cooey v. Strickland*, 589 F.3d 210, 220 (6th Cir. 2009) ("To demonstrate that Ohio seeks to impose 'cruel and unusual' punishment, U.S. Const. amend. VIII, Biros must show that its protocol ignores a '*sure or very likely*' risk of serious pain 'and needless suffering,' which 'creates a demonstrated risk of severe pain' *that is 'substantial when compared to the known and available alternatives.'*") (second emphasis added) (quoting *Baze*, 553 U.S. at 50, 61 (plurality opinion)).[2]

Without a plausible allegation of a feasible and more humane alternative method of execution, or a purposeful design by the State to inflict unnecessary pain, the plaintiffs have not stated an Eighth Amendment claim based on the use of compounded pentobarbital. Nor have they stated a claim under Article I, Section 21 of the Missouri Constitution, which embodies the same standard as the Eighth Amendment. *Burnett v. State*, 311 S.W.3d 810, 814 n.3 (Mo. Ct. App. 2009). It was therefore a clear abuse of discretion for the district court to allow the claim to proceed and to order on that basis discovery of sensitive information, the disclosure of which Lombardi avers would prevent the State from acquiring lethal chemicals necessary to carry out the death penalty.

---

[2]This court's decisions in *Nooner v. Norris*, 594 F.3d 592 (8th Cir. 2010), and *Clemons v. Crawford*, 585 F.3d 1119 (8th Cir. 2009), and the decisions of the Ninth Circuit in *Cook v. Brewer*, 649 F.3d 915 (9th Cir. 2011), and *Cook v. Brewer*, 637 F.3d 1002 (9th Cir. 2011), all rejected Eighth Amendment claims on the ground that a plaintiff failed to show a substantial risk of serious harm. None of those decisions held that an Eighth Amendment challenge to method of execution could succeed without a showing that the alleged risk is substantial when compared to known and available alternatives.

The plaintiffs also assert a violation of the Ex Post Facto Clauses of the federal and state constitutions, claiming that the use of compounded pentobarbital in the current execution protocol constitutes an unconstitutional increase in punishment over the former method of execution. The manner of punishment for capital murder in Missouri at all relevant times, however, has been death by lethal injection or lethal gas, with discretion granted to the Director of the Department of Corrections to establish the method of execution. Mo. Rev. Stat. § 546.720.1. The plaintiffs were on fair notice of this discretion when they committed their crimes, and the discretion was not later removed as was alleged in *Garner v. Jones*, 529 U.S. 244, 254 (2000). As the Supreme Court observed, "discretion, by its very definition, is subject to changes in the manner in which it is informed and then exercised." *Id.* at 253.

In the context of the death penalty, moreover, the Court long ago ruled that "[t]he constitutional inhibition of *ex post facto* laws was intended to secure substantial personal rights against arbitrary and oppressive legislative action, and *not to obstruct mere alteration in conditions deemed necessary for the orderly infliction of humane punishment.*" *Malloy v. South Carolina*, 237 U.S. 180, 183 (1915) (emphasis added). Although *Malloy* involved a change in method of execution from hanging to electrocution, which several States considered more humane, the general proposition stated in that case is sound where the State has neither deliberately acted to inflict pain for the sake of pain nor ignored a readily available alternative that would substantially reduce a risk of severe pain.

The plaintiffs do not allege that the Director, in the exercise of his discretion, has employed anything other than the most humane method of execution available. That a former method of execution is no longer available does not mean that adoption of the next best method is an unconstitutional increase in punishment. The punishment—death—has not changed. The prisoners had fair notice of that punishment, and of the Director's discretion to determine the method of execution, when they committed their crimes. Where "only the mode of producing" death has

changed, with no allegation of superadded punishment or superior alternatives, the Ex Post Facto Clauses are not implicated. *Id.* at 185; *see State v. Harris*, No. SC 93170, 2013 WL 5460639, at *2 (Mo. Oct. 1, 2013) ("The Missouri Constitution's ban on ex post facto laws is coextensive with the United States Constitution's ban on ex post facto laws.").

As to the other claims raised by the plaintiffs, the identities of the prescribing physician, pharmacist, and laboratory are plainly not relevant. Citing various constitutional, statutory, and regulatory provisions, the plaintiffs challenge the Director's authority to use pharmacist-compounded pentobarbital in executions at all, to carry out executions or modify the execution protocol during the pendency of this litigation, to name any prescribing physician, pharmacist, or laboratory to the execution team, and to shield the identities of execution team members like the physician, pharmacist, and laboratory from the plaintiffs and the public. They also complain that the execution team could use a central venous line to insert a catheter when it is not clinically indicated (despite a supervising official's affidavit to the contrary), and that changes in the execution protocol create uncertainty that enhances anxiety for the prisoners. But the merits of these claims do not depend on the identities of the physician, pharmacist, or laboratory.

For these reasons, we grant the Director's petition for a writ of mandamus and vacate the district court's discovery orders, R. Doc. 203 and 204, dated December 12, 2013. In light of the issuance of this writ, the Director's petition for a writ of mandamus directed to the district court's order denying a motion for protective order, R. Doc. 205, is denied.

GRUENDER, Circuit Judge, concurring.

I concur in the opinion of the Court. However, I write separately to explain the discrepancy between my vote on the administrative panel and my vote upon rehearing

-15-

en banc. In Lombardi's petition for a writ of mandamus, filed on December 13, 2013, he did not raise the argument that mandamus should issue to prevent the disclosure of the identities at issue because the prisoners' relevant underlying claims fail to state a claim upon which relief can be granted. Instead, Lombardi relied solely on the state secrets privilege. On December 23, Lombardi moved for leave to file supplemental suggestions in support of his petition for a writ of mandamus. In that motion, he noted that he had filed a motion to dismiss in the district court on December 20, 2013—ten days *after* the district court entered the discovery orders challenged here—and argued that the substance of the motion provided a further basis for granting him mandamus relief. Because Lombardi relied exclusively on the December 20 motion to dismiss, I concluded that, regardless of whether his failure-to-state-a-claim argument had merit, he had not timely raised it. Even in his petition for rehearing en banc, Lombardi did not suggest that he had raised this argument before the district court prior to December 20. However, I have since determined that on August 8, 2012, Lombardi filed a motion to dismiss a prior iteration of the prisoners' complaint. In that motion, Lombardi advanced substantially the same argument that he presented in his December 20, 2013, motion to dismiss. Thus, this argument was before the district court prior to its entry of the discovery orders challenged here. And I find that argument—as articulated in the Court's opinion—to be persuasive. Accordingly, I concur in the opinion of the Court.

BYE, Circuit Judge, with whom MURPHY and KELLY, Circuit Judges, join, dissenting.

The Director is not entitled to the extraordinary remedy of a writ of mandamus. Such a remedy is proper only in cases of "a judicial usurpation of power or a clear abuse of discretion," and only if the party seeking mandamus relief "show[s] that his right to issuance of the writ is clear and indisputable." Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380-81 (2004) (internal quotations, brackets, and citations omitted). Because the district court did not clearly abuse its discretion in ordering the

-16-

Director to disclose the identities of the compounding pharmacist and the testing laboratory, the petition for a writ of mandamus should be denied.[3]

Here, the majority grants this extraordinary remedy after concluding the district court abused its discretion in failing to dismiss the prisoners' Eighth Amendment claim on a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. The majority holds that, in order to survive a Rule 12(b)(6) motion, a plaintiff must now plead a "readily available alternative method" to the current method of execution the plaintiff is challenging. The majority inexplicably gleans this pleading requirement from a case which in no way addressed the pleading standard for an Eighth Amendment claim. In Baze v. Rees, 553 U.S. 35 (2008), Chief Justice Roberts issued a plurality opinion joined by Justices Kennedy and Alito. In Baze, multiple death row inmates brought suit against Kentucky's Department of Corrections Commissioner. They sought to have Kentucky's three-drug lethal injection protocol declared unconstitutional. Id. at 46. However, Baze did not involve a Rule 12(b)(6) motion to dismiss. Instead, the parties had engaged in extensive discovery and, ultimately, a seven-day bench trial during which the trial court received the testimony of approximately twenty witnesses. At the conclusion of the trial, the trial court issued a judgment upholding the execution protocol.

Chief Justice Roberts' plurality opinion did not establish a new pleading standard, nor did it purport to do so. Chief Justice Roberts was discussing alternative methods because the plaintiffs there had proposed several alternatives as a means of demonstrating the constitutional deficiency of Kentucky's execution protocol at the time. Baze, 553 U.S. at 56-57. Thus, Chief Justice Roberts' plurality opinion should not be read to create a more rigorous pleading requirement for an Eighth Amendment claim.

---

[3]Because the prisoners have not challenged the grant of mandamus relief as to the identity of the prescribing physician, I will not address that issue here.

-17-

The majority concludes the district court committed a "clear abuse of discretion" by declaring "Plaintiffs are not required to propose an alternative method of execution" even though the two decisions of this Court which addressed <u>Baze</u> in no way acknowledged any such requirement. In <u>Clemons v. Crawford</u>, 585 F.3d 1119 (8th Cir. 2009), this Court addressed whether Missouri's execution protocol violated the Eighth Amendment in the context of grant of judgment on the pleadings. The <u>Clemons</u> court noted the grant of judgment on the pleadings is reviewed "under the same standard used to address a motion to dismiss for failure to state a claim under [Fed. R. Civ. P.] 12(b)(6)." <u>Clemons</u>, 585 F.3d at 1124 (internal quotations and citation omitted).

The <u>Clemons</u> court outlined the standard for establishing an Eighth Amendment claim, stating:

> "[T]he Constitution does not demand the avoidance of all risk of pain in carrying out executions." [<u>Baze</u>, 553 U.S. at 36.] Instead, to establish an Eighth Amendment violation, "the conditions presenting the risk must be 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.'" <u>Id.</u> at 50 (quoting <u>Helling v. McKinney</u>, 509 U.S. 25, 33, 34 (1993)). "[T]o prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" <u>Id.</u> at 50 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 842, and 846 n. 9 (1994)). The mere fact "an execution method may result in pain, either by accident or as an inescapable consequence of death," does not amount to an Eighth Amendment violation. <u>Id.</u>

<u>Clemons</u>, 585 F.3d at 1125.

At no point does the <u>Clemons</u> court suggest a plaintiff is required to propose an alternative method of execution in order to sufficiently plead an Eighth

-18-

Amendment claim. This omission is instructive because the case specifically involved the pleading standard and the opinion extensively discussed Chief Justice Roberts' plurality opinion in Baze.

Likewise, in Nooner v. Norris, 594 F.3d 592 (8th Cir. 2010), this Court addressed whether Arkansas' execution protocol violated the Eighth Amendment in the context of a grant of summary judgment in favor of the State. Nooner articulated a standard very similar, if not identical, to the Clemons' standard. Nooner, 594 F.3d at 598-99. The Nooner court also cited extensively to Baze, but never mentioned a readily available alternative method of execution requirement. Id. at 598-608. Nor should it have, for no such requirement exists.

Other circuits have applied a similar standard post-Baze to our decisions in Clemons and Nooner. In Cook v. Brewer, 637 F.3d 1002 (9th Cir. 2011), and Cook v. Brewer, 649 F.3d 915 (9th Cir. 2011), the Ninth Circuit, in considering a Rule 12(b)(6) motion to dismiss, cited Baze repeatedly and stated a standard nearly identical to that set forth in Clemons and Nooner. See Cook, 637 F.3d at 1004-05; Cook, 649 F.3d at 917. Neither decision referenced a readily available alternative method as a pleading requirement for an Eighth Amendment claim.

Because this Court has previously read Baze not to have modified the pleading requirement for an Eighth Amendment claim, it is unclear how the majority can now conclude the district court "clearly abused its discretion" by reaching the same conclusion as this Court did in both Clemons and Nooner. Indeed, the district court was bound to follow the Clemons and Nooner decisions. Those decisions were properly decided, and they properly articulate this Court's pleading requirement for an Eighth Amendment claim. To say the district court clearly abused its discretion in following those decisions is misguided.

In addition, the majority mysteriously finds error with the district court's denial of a motion to dismiss, even though that motion involved the prisoners' original complaint which is no longer relevant. The original complaint addressed an earlier execution protocol instituted by Missouri which utilized propofol. The district court's December 12, 2013, discovery order, the order at issue here, addressed the prisoners' amended complaint attacking Missouri's use of compounded pentobarbital. The December 12, 2013, discovery order in no way concerned Missouri's use of propofol. The district court's denial of the Directors' earlier motion to dismiss is irrelevant to our present inquiry, and, thus, the majority's reliance on it is misplaced.

Next, the majority elects to adopt a reading of Baze which places an absurd burden on death row inmates. The pleading standard advanced by the majority would require the prisoners to identify for the Director a readily available alternative method for *their own* executions. Now, any individual wishing to challenge a state's execution method as unconstitutional must identify a readily available alternative method for their own deaths before any discovery has been conducted to survive a Rule 12(b)(6) motion to dismiss. The challenge of proposing a readily available alternative method seems nearly impossible if the prisoners are denied discovery and, thus, unable to ascertain even basic information about the current protocol. The proposition that a plaintiff must propose an alternative method for his own execution in order to state a claim for relief under the Eighth Amendment is unreasonable.

Assuming, for the sake of argument, the dicta in Chief Justice Roberts' plurality opinion in Baze is the new pleading standard, the prisoners have still sufficiently alleged a claim under the Eighth Amendment. The prisoners seek an alternative protocol to Missouri's current method of producing and testing compounded pentobarbital. They desire a method which ensures the chemical composition, purity, efficacy, and safety of compounded pentobarbital. The prisoners have never argued properly compounded and tested pentobarbital would not be an alternative method. Instead, the prisoners' argument is the use of a compounded substance purported to

-20-

resemble pentobarbital, acquired from a non-traditional, non-FDA-approved compounding pharmacy which likely lacks the ability to test chemicals for identity, potency, purity, and contamination, is what violates the Eighth Amendment. It is clear the readily available alternative method here is one which guarantees the chemicals used in Missouri's executions do not cause "serious illness and needless suffering" and "give rise to 'sufficiently imminent dangers.'" Baze, 553 U.S. at 50.

The Director next raises the question of privilege. The Director has characterized his asserted privilege as a "state secrets" privilege. This comparison is inapt, as the state secret privilege has a narrow applicability limited to cases involving national security, diplomatic secrets, and military intelligence. See Black v. United States, 62 F.3d 1115, 1118-19 (8th Cir. 1995). No such issue is before the Court now. Instead, the Director seeks to avoid disclosure, asserting the compounding pharmacist and testing laboratory face the threat of harassment, intimidation, and harm. These assertions are largely unsupported. See Cal. First Amendment Coal. v. Woodford, 299 F.3d 868, 880 (9th Cir. 2002) (noting the State's fear execution team members would be identified and retaliated against was speculative). In addition, execution team members are protected by Missouri law. Mo. Rev. Stat. § 546.720.4 provides any "licensing board or department shall not censure, reprimand, suspend, revoke, or take any other disciplinary action against the person's license because of his or her participation in a lawful execution." This provision further minimizes any concerns of reprisal against members of the execution team.

Although the Director's state secrets privilege argument is misguided, some courts have recognized it may be appropriate to apply state law privileges as part of the federal common law of privilege pursuant to Federal Rule of Evidence 501. See Am. Civil Liberties Union of Miss., Inc. v. Finch, 638 F.2d 1336, 1343-44 (5th Cir. 1981). The Finch court outlined a two-step balancing test to determine whether to apply a state-law privilege in a case based on federal question jurisdiction. First, the court asks whether a state court would apply the privilege. Id. at 1343. If so, then the

-21-

court must determine "whether the privilege is intrinsically meritorious in [the court's] independent judgment." Id. This inquiry requires "balancing the policies behind the privilege against the policies favoring disclosure." Id.

Applying the first step, a state court likely would not apply the privilege to the compounding pharmacist or the testing laboratory. Mo. Rev. Stat. § 546.720 governs the execution team privilege here. Section 546.720.2 defines the execution team as:

> those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, who provide direct support for the administration of lethal gas or lethal chemicals.

Mo. Rev. Stat. § 546.720.2.

The plain meaning of section 546.720.2 limits the execution team to those individuals administering or providing "direct support" for the administration of lethal chemicals. The statute thus limits confidentiality protection to those members who are directly involved in administration of the execution. The execution team must be defined more narrowly than suggested by the Director, otherwise the "direct" in "provide direct support for the administration" would be rendered superfluous. Further, the terms "administer" and "administration" must be read in context. See United States v. Behrens, 713 F.3d 926, 929 (8th Cir. 2013) ("Statutory language must be read in context and a phrase gathers meaning from the words around it."). Because "administer" clearly refers to the actual injection of lethal chemicals, this strongly suggests "administration" similarly refers to assistance of the actual injection. The phrase "such as medical personnel" further bolsters a narrow reading of the statute. As the affidavit submitted by Larry D. Sasich states, "[n]on-traditional compounding pharmacy practice resembles drug manufacturing more than it does the practice of pharmacy." Because compounding pharmacists function more as drug manufacturers than medical personnel, they should not fall within the sweep of the

-22-

statute. Testing laboratories are even less likely to be deemed analogous to "medical personnel."

For these reasons, Missouri's execution team privilege is inapplicable here. Yet, even assuming a state court would apply the privilege, balancing the underlying policies would favor disclosure. Accordingly, the district court did not commit a clear abuse of discretion. Although speculative, the disclosure of the compounding pharmacist's identity – and, to a lesser extent, the testing laboratory's identity – may result in reprisals or harassment which could impair Missouri's ability to obtain a compounded mixture of pentobarbital in the future.

However, with regards to Missouri's policies behind this privilege, the prisoners' interests are much more significant. The prisoners have a significant interest in obtaining the identities of these parties to assert their constitutional right against being subjected to "serious illness and needless suffering" during execution. Baze, 553 U.S. at 50. The prisoners' claims revolve around the chemical composition, purity, potency, and safety of the compounded mixture of pentobarbital used by Missouri. The prisoners cannot adequately investigate their claims unless the Director discloses these identities. The supplemental declarations submitted by Mr. Sasich underscore the deficiencies of relying on the reports of the testing laboratory. Without disclosure, neither the prisoners nor the district court can effectively assess the accuracy and significance of these reports. This consideration is important because the Director has relied heavily on the testing laboratory's reports in its efforts to demonstrate its execution protocols do not threaten serious and needless suffering.

Further, identifying the compounding pharmacist appears to be essential in determining the process used to compound these chemical mixtures. Mr. Sasich's affidavit extensively highlights the potential problems associated with largely unregulated compounding pharmacies and the need to fully investigate their procedures to ensure the final product comports with the stringent requirements of the

Eighth Amendment. Aside from disclosure, the Director has not shown how the prisoners can obtain critical information about the chemical composition, purity, potency, and safety of the compounded pentobarbital which Missouri uses in its executions.

Although the Director has some interest in keeping the identities of the testing laboratory and the compounding pharmacist confidential, that interest is outweighed by the significant interests of the prisoners in disclosure. Without this information, it is unclear whether they can adequately investigate and litigate these important claims. Thus, the Director has not carried his heavy burden of demonstrating clearly and indisputably the district court abused its discretion in ordering disclosure of the identities of the testing laboratory and the compounding pharmacist.

For the foregoing reasons, I respectfully dissent.

_____