# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3072

_____

In re: Missouri Department of Corrections

*Petitioner*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: October 3, 2016
Filed: October 13, 2016

_____

Before SMITH, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

The Missouri Department of Corrections ("MDOC") has filed two petitions for writs of mandamus prohibiting the district court from enforcing discovery orders. The first order requires MDOC to produce a detailed privilege log, and the second order requires MDOC to reveal information regarding its use of pentobarbital in executions, including the identity of its anonymous supplier. The anonymous supplier has moved to intervene under the pseudonym M7 and has filed a motion for leave to file a petition of its own. For the reasons stated below, we grant both of MDOC's petitions, and we deny as moot M7's motion for leave to file a petition.

## I. Background

Richard Jordan and Ricky Chase ("the inmates") are Mississippi death-row inmates whom Mississippi proposes to execute by the serial intravenous injection of three drugs: midazolam, vecuronium bromide, and potassium chloride. In a case presently pending in the United States District Court for the Southern District of Mississippi, these inmates are challenging this execution method as cruel and unusual punishment under the Eighth Amendment. After the court denied a motion to dismiss, the inmates served upon MDOC a third-party subpoena for documents and a Federal Rule of Civil Procedure ("FRCP") 30(b)(6) deposition notice seeking information regarding MDOC's use of pentobarbital in lethal injections, including the identity of MDOC's supplier of pentobarbital.

MDOC filed a motion to quash the subpoena in the United States District Court for the Western District of Missouri. In support of this motion, it submitted the affidavit of MDOC Director George Lombardi. Lombardi explained that because MDOC's pentobarbital suppliers "require the assurance of confidentiality," producing the information sought by the inmates would result in the state no longer being able to obtain the drug for use in executions. In light of this risk, MDOC argued that the inmates' subpoena represented an undue burden under FRCP 45(d)(3)(A)(iv). MDOC also raised other arguments based on sovereign immunity and the state secrets privilege.

The district court held a hearing on MDOC's motion to quash. During the hearing, the district court questioned the reliability of Lombardi's dire predictions, noting that there seemed to be no "effort to reach out to M7" and that "Lombardi could have said, I called up the pharmacy, I called up M7, and M7 if it's ordered in this federal case, said they're never, ever, ever going to sell again." After considering MDOC's arguments, the district court held that Lombardi's affidavit was "insufficient to establish that Missouri's supplier will no longer supply pentobarbital to Missouri

if identified to Respondents" because Lombardi's statement was "a bare, hearsay assertion unsupported by record evidence." As a result, the district court rejected MDOC's arguments, denied MDOC's motion to quash the inmates' subpoena, and ordered MDOC to produce the majority of information the inmates sought as well as a detailed privilege log.

MDOC then filed in this court petitions for writs of mandamus to prevent the enforcement of these orders. Along with these petitions, MDOC submitted a supplemental affidavit by Lombardi. In this affidavit, Lombardi acknowledged that "the district court questioned the sufficiency of my prior statements regarding this confidentiality." He then declared, "To be clear, MDOC's supplier(s) has advised that if the supplier's identity is disclosed the supplier will no longer supply lethal chemicals to Missouri for use in executions and will not supply lethal chemicals to any other state." Lombardi did not specify when the supplier made this statement or whether MDOC had contacted the supplier regarding this specific litigation.

Thus, in our original opinion, we held that this affidavit remained inherently speculative. As a result, we rejected MDOC's claims that the information sought was irrelevant to the inmates' claims, that disclosure would result in an undue burden on MDOC, and that the subpoena violated Missouri's sovereign immunity. Furthermore, we noted that MDOC had failed to explain why any alternative means of relief, such as a protective order, would be inadequate. Therefore, we denied MDOC's petitions for writs of mandamus.

MDOC then filed a petition for rehearing in which it reasserted its previous arguments and added a new argument explaining why it had no adequate alternative means of relief. In addition, M7 moved to intervene and proceed anonymously. M7 submitted a declaration which confirmed the suspicions of both the district court and this court that MDOC had not contacted M7 at any point during the litigation. Instead, M7 averred that MDOC had contacted M7 only after we originally denied

-3-

MDOC's petitions. Nevertheless, M7 confirmed that, "[i]f disclosure of M7's identity is required, M7 will not supply lethal chemicals to the state of Mississippi. In fact, M7 will no longer supply lethal chemicals at all."

In light of this new information, we vacated the original panel opinion, granted MDOC's petition for rehearing, invited M7 to submit evidence, and allowed the inmates to respond. M7 also filed a motion for leave to file its own petition for a writ of mandamus, arguing that disclosure would result in an undue burden on M7 and a violation of M7's First Amendment rights.

## II. Discussion

Writs of mandamus are "useful 'safety valves' for promptly correcting serious errors." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 883 (1994)). Thus, although discovery orders are not ordinarily appealable, "mandamus may issue in extraordinary circumstances to forbid discovery of irrelevant information, whether or not it is privileged, where discovery would be oppressive and interfere with important state interests." *In re Lombardi*, 741 F.3d 888, 895 (8th Cir. 2014) (en banc). To obtain a writ of mandamus, the petitioning party must satisfy two prerequisites: his entitlement to the writ must be "clear and indisputable," and he must have "no other adequate means to attain the relief he desires." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004). "[I]f the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* at 381.

We first address whether MDOC's entitlement to the writ is clear and indisputable. On this point, MDOC makes three arguments: (1) the information sought by the inmates is not relevant to their Eighth Amendment claims, (2) the disclosure would result in an undue burden on MDOC, and (3) the subpoena violates

Missouri's sovereign immunity. Each of these arguments represents an independently sufficient ground for holding that MDOC is entitled to the writ.

First, MDOC argues that the unique circumstances of this case will render the identity of MDOC's supplier irrelevant to the inmates' claim. In order to succeed on their Eighth Amendment claim, the inmates must identify an "available alternative method of execution" that Mississippi could use. *See Glossip v. Gross*, 576 U.S. ---, 135 S. Ct. 2726, 2737 (2015). As M7 now has confirmed, M7 will cease to provide pentobarbital to anyone, including Mississippi, once its identity is disclosed. Therefore, according to MDOC, disclosure of M7's identity will not help the inmates establish the existence of an *available* alternative method of execution.

The inmates respond that the information remains relevant because the availability of pentobarbital is "at issue in the underlying case." The inmates distinguish this case from *In re Lombardi*, where we granted a writ, by arguing that the complaint in that case "failed to propose an alternative method of execution." Indeed, in *In re Lombardi*, we granted a writ to MDOC because the identity of its lethal chemicals supplier was "not relevant to any claim that should survive a motion to dismiss." *In re Lombardi*, 741 F.3d at 895. The inmates point out that their claim alleged an available alternative and has survived a motion to dismiss.

However, this argument does not explain how M7's identity will remain relevant once M7 indisputably refuses to make pentobarbital available to anyone. Although the requested identity information in *In re Lombardi* may have been irrelevant because the claim did not allege an available alternative, we did not draw a distinction between claims that survive a motion to dismiss and those that do not. Rather, we held simply that mandamus may issue to prevent discovery of "irrelevant information." *Id.* The inmates' allegations alone do not establish relevancy of information that is not "of consequence in determining the action." Fed. R. Evid. 401. Therefore, because M7 would not supply pentobarbital to Mississippi once its

identity is disclosed, we conclude that M7's identity has no relevance to the inmates' Eighth Amendment claim.

Second, even if M7's identity had any relevance to the inmates' claim, M7's declaration also establishes that the disclosure of M7's identity will result in an undue burden on MDOC. FRCP 45(d)(3)(A)(iv) prohibits the discovery of information "where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)). A state has an interest in "exercising its sovereign power to enforce the criminal law." *In re Blodgett*, 502 U.S. 236, 239 (1992). As M7's declaration demonstrates, disclosure of M7's identity will certainly harm this interest by preventing MDOC from acquiring pentobarbital for executions from M7. Without M7, Lombardi states that MDOC "would not be able to obtain the lethal chemicals necessary to carry out its lawful executions." Meanwhile, the inmates have no need for M7's identity because it has little, if any, relevance to their Eighth Amendment claim.

In response, the inmates do not address the harm posed by MDOC losing its pentobarbital supplier. Rather, they attempt to show that MDOC will be able to carry out death sentences even without maintaining M7's secrecy. Specifically, they point to statements by pharmaceutical manufacturers to show that suppliers are "not cowering in the wake of capital punishment abolitionists." But even if M7's fears are unfounded, that does not change the fact that M7 has already declared a clear intention to cease supplying if M7's identity is disclosed. Thus, we conclude that the harm to MDOC clearly outweighs the need of the inmates, and disclosure would represent an undue burden on MDOC. Because we hold that MDOC is clearly entitled to a writ on the grounds of relevancy and undue burden, we do not address MDOC's sovereign immunity argument.

Next, we address whether MDOC has any other adequate means of relief. MDOC contends that we have previously granted a writ in similar circumstances. Indeed, in *In re Lombardi*, we granted a writ to prevent disclosure of the lethal chemical supplier's identity instead of requiring a protective order. 741 F.3d at 897. MDOC also contends that the district court cannot prevent the inmates from responding to discovery requests from the Mississippi Department of Corrections ("MS-DOC") and cannot limit further disclosure by MS-DOC.

The inmates respond that the district court can, in fact, include "a provision requiring third parties to agree to be bound by the terms of a protective order as a condition precedent to receiving documents produced under such an order." The inmates cite protective-order clauses directed at individuals retained by lawyers or parties to provide assistance or testimony. *See Karr v. Oil & Gas Transfer L.L.C.*, No. 1:16-CV-00053, 2016 WL 3621089, at *1 (D.N.D. June 28, 2016); *Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 504-05 (S.D. Iowa 1992). However, even assuming that the district court can issue such an order directed at MS-DOC, the inmates fail to distinguish this case from *In re Lombardi*. There, we granted a writ based on Lombardi's assertion that "it is likely that active investigation of the physician, pharmacy, and laboratory will lead to further disclosure of the identities." 741 F.3d at 894. The inmates do not offer any assurances that they will be able to investigate the supplier any more subtly than the inmates in *In re Lombardi*.

Moreover, M7 has not indicated that M7 would continue to supply pentobarbital so long as the district court issues a protective order. Rather, M7 has alleged that M7 will cease to supply pentobarbital "if disclosure of M7's identity is required." In light of this risk, as in *In re Lombardi*, we must conclude that MDOC "has no other adequate means to attain the relief [MDOC] desires." *Id.* at 895.

Lastly, we address whether issuance of the writ is appropriate under the circumstances. The inmates argue that the doctrine of "unclean hands" bars MDOC's

request for mandamus if the request is designed to conceal M7's violation of property and contract rights of others. Specifically, the inmates contend that "Akorn is the only approved manufacturer of pentobarbital" and that M7 may be "selling Akorn's licensed product contrary to the manufacturer's contract rights." The only legal authority that the inmates cite is a 1945 Supreme Court case affirming the dismissal of a patent infringement action because the plaintiff acted in "bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Mach. Co.*, 324 U.S. 806, 814 (1945). There, it was "clear that [the plaintiff] knew and suppressed facts that, at the very least, should have been brought in some way to the attention of the Patent Office." *Id.* at 818. Here, it is not "clear" that MDOC or M7 are requesting writs in bad faith. The inmates contend that MDOC may have purchased manufactured pentobarbital, but we do not find this contention sufficient to establish that MDOC has unclean hands.[1] Therefore, we conclude that mandamus relief is appropriate.

## III. Conclusion

Because MDOC is clearly entitled to the writ and has no adequate alternative means of relief and because it is appropriate to issue the writ, we grant both of MDOC's petitions for writs of mandamus. Because this would provide the precise relief sought by M7, we deny as moot M7's motion for leave to file a petition for a writ.

—————————————————

---

[1]We grant the inmates' motion to file a portion of the district court hearing transcript under seal. However, we do not agree that the statements contained within the transcript prove that MDOC is requesting the writs in bad faith.