**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 24-1377**

———————

BRADFORD M. KENDRICK,

        Plaintiff – Appellant,

    v.

CARTER BANK & TRUST, INC.,

        Defendant – Appellee.

———————

Appeal from the United States District Court for the Western District of Virginia, at Danville.  Elizabeth K. Dillon, Chief District Judge.  (4:19-cv-00047-EKD)

———————

Argued:  January 29, 2025                          Decided:  March 21, 2025

———————

Before KING and THACKER, Circuit Judges, and FLOYD, Senior Circuit Judge.

———————

Affirmed by unpublished opinion.  Judge King wrote the opinion, in which Judge Thacker and Judge Floyd joined.

———————

**ARGUED:**  Terry Neill Grimes, TERRY N. GRIMES, ESQ., PC, Roanoke, Virginia, for Appellant.  King Fitchett Tower, WOODS ROGERS VANDEVENTER BLACK PLC, Roanoke, Virginia, for Appellee.  **ON BRIEF:**  Kaley J. Gordon-Shupp, TERRY N. GRIMES, ESQ., PC, Roanoke, Virginia, for Appellant.  Joshua Richard Treece, Christine S. Ward, WOODS ROGERS VANDEVENTER BLACK PLC, Roanoke, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

KING, Circuit Judge:

Plaintiff Bradford M. Kendrick, a 35-year employee of Carter Bank & Trust, Inc. ("Carter Bank," or the "Bank") and its predecessors, pursues this appeal from an adverse judgment of the Western District of Virginia. Kendrick primarily challenges the district court's award of summary judgment to Carter Bank on claims of disparate treatment, hostile work environment, and retaliation, pursued under the Age Discrimination in Employment Act of 1967 (the "ADEA"). Kendrick also challenges two adverse discovery rulings made in connection with the summary judgment record, that is, (1) the court's rejection of Kendrick's effort to depose a Director of the Bank, who had also served as its counsel, and (2) the court's rejection of Kendrick's effort to expand the summary judgment record by filing a tardy "Notice of Supplemental Facts." As explained herein, the court did not abuse its discretion in connection with either of those discovery rulings. In addition, the summary judgment award was not flawed, and the court's rejection of two of Kendrick's ADEA claims was also justified by Kendrick's misconduct in connection with his mishandling of Bank records. We therefore affirm the challenged judgment.

I.

A.

In May 1985, plaintiff Kendrick was hired at what is now Carter Bank by an individual named Worth Carter. Mr. Carter was the Bank's primary founder, and he later served as its Chief Executive Officer ("CEO"), as well as Chairman of its Board of Directors. Kendrick was promoted several times during his 35-year tenure with the Bank,

2

and in 2014 he was named as "Executive Vice President of IT." Kendrick retained that title until July 2017, when he was given a new position with the Bank. Kendrick's termination by the Bank in May 2020 is contested in this litigation.[1]

While serving as Executive Vice President of IT, Kendrick supervised Carter Bank's information technology infrastructure, which then operated under a system called CoreSoft. CoreSoft maintained all the Bank's customer information and was the center of the Bank's other IT systems. During Kendrick's tenure in connection with the IT systems, the Bank's regulators expressed concerns about CoreSoft, due to technological deficiencies that impaired the Bank's operations and its ability to compete with other financial institutions. Unlike its competitors, most of Carter Bank's transactions were performed manually, and the Bank did not have, inter alia, ATMs or online banking options available for its customers. During Kendrick's leadership of its IT department, Carter Bank was at least 20 years behind its banking peers and competitors with respect to information technology.

After Mr. Carter's death in April 2017, a man named Van Dyke was named as Carter Bank's CEO. Mr. Van Dyke intended to modernize the Bank's IT operations and move away from CoreSoft. Consistent with those efforts, the Bank created a new position called the Chief Information Officer ("CIO"), which Kendrick believed he was qualified to fill. Kendrick thus applied for the CIO position and met with Van Dyke in that regard.

---

[1] Because this is an appeal from an award of summary judgment, we recite the facts in the light most favorable to plaintiff Kendrick, as the non-moving party. *Durham v. Horner*, 690 F.3d 183, 185 n.3 (4th Cir. 2012).

Kendrick, however, was not selected as the Bank's CIO.[2] A man named Speare was instead hired as the CIO on July 1, 2017. Mr. Speare was better qualified than Kendrick in modern IT operations, in that Kendrick was familiar only with the outdated CoreSoft system. Kendrick was then reassigned and given a new position with the Bank called "Executive Vice President, Chief Information Security Officer." Kendrick retained that new position until his termination by the Bank in May 2020. When Speare assumed his role as the Bank's CIO, Van Dyke reassigned most of Kendrick's earlier duties to Speare. For example, Kendrick was then no longer authorized to attend meetings of the Bank's executives.

### B.

Two years later, on August 14, 2019, Kendrick — still working for the Bank — filed a Charge of Age Discrimination against Carter Bank with the Equal Employment Opportunity Commission (the "EEOC"). Kendrick alleged therein that he was being harassed and discriminated against by the Bank on account of his age, that is, he was then 63 years old. Less than a month later, on September 11, 2019, the EEOC dismissed his age discrimination charge as untimely, because most of his alleged acts of harassment had occurred in 2017.

Three months thereafter, on December 2, 2019, Kendrick initiated this civil action against Carter Bank in the Western District of Virginia, alleging violations of the ADEA, that is, age discrimination and age-based "harassment." After filing his lawsuit against the

---

[2] In fact, Kendrick was not recommended for the CIO position by an outside consultant, which had advised the Bank on creating and filling the new position.

Bank, Kendrick continued to work there, apparently without incident, for almost six months. In May 2020, however, Kendrick — without authorization to do so — removed an extensive amount of confidential Bank and customer information from the Bank. And he provided those confidential Bank records to the lawyer that represented him in this lawsuit.

On May 8, 2020, Kendrick's lawyer uploaded those confidential Bank records — including confidential customer-related information, Board minutes, and correspondence with the Bank's regulators — to a court system available to the public called Public Access to Court Electronic Records ("PACER").[3] On May 29, 2020, as a result of the unauthorized disclosures of the Bank's confidential records on PACER, Carter Bank terminated Kendrick for cause, that is, because those disclosures had violated federal law, the Bank's code of conduct, and Kendrick's personal pledge of confidentiality to the Bank.[4]

About a week after his PACER disclosures of the Bank's confidential records, on June 2, 2020, Kendrick filed another charge with the EEOC, this time alleging age

---

[3] PACER is a service of the federal court system that provides electronic public access to federal court records. The PACER system gives members of the public instantaneous access to more than a billion documents filed in the federal courts.

[4] Indeed, Kendrick had actually assisted in preparing the Bank's pledge of confidentiality, which he then violated when he removed confidential Bank and customer information from the Bank.

discrimination and retaliation.  On September 24, 2020, he received from the EEOC a notice of his right to sue.

On December 8, 2020, Kendrick filed an amended complaint in the district court. His operative amended complaint contains claims for age discrimination and harassment (Count I) and for retaliation (Count II).  Therein, Kendrick alleged several instances of age-based harassment directed against him by high-ranking Bank officials, including:

- a statement made by Karavatakis, a Bank executive, sometime before April 2017, that Kendrick and other older employees should be "finding [their] replacements";

- Mr. Speare's late 2017 statement that the Bank's employees "are not getting any younger" and "we need to be hiring younger people because it takes longer for older people to learn the new technologies";

- statements of officials in 2017 regarding succession planning for the Board of Directors; and

- testimony of Mr. Van Dyke during a 2022 deposition that, in the context of a succession planning discussion in June 2020, he had said that the Bank needed to "achieve the right balance of tenure, age, market representation, diversity, and expertise" on the Board of Directors.

*See Kendrick v. Carter Bank & Tr., Inc.*, No. 4:19-cv-00047, 2024 WL 1346914 (W.D. Va. Mar. 29, 2024), ECF No. 232 at 6–7 (the "SJ Ruling") (cleaned up).  Additionally, Kendrick alleged that he had not received any performance reviews from the Bank in 2019 and 2020.

6

C.

1.

During the discovery proceedings in this case, two issues arose that are now presented on appeal. First, Carter Bank sought a protective order to bar the deposition of a lawyer named Haskins — a member of the Bank's Board of Directors — who had served as counsel for the Bank in this lawsuit. That dispute resulted in the issuance of a protective order by a magistrate judge. Second, Kendrick filed an untimely "Notice of Supplemental Facts" with the court after the summary judgment briefing had concluded, and which contravened the pertinent Local Rules. The Bank moved to strike that submission due to its tardiness and Kendrick's failure to obtain leave of court for the filing of his Notice. Both of those issues were resolved against Kendrick by the district court.

a.

On June 28, 2022, Carter Bank sought the aforementioned protective order from the district court barring the deposition of Mr. Haskins. Haskins was a lawyer in southwest Virginia who had served as Chair of the Bank's Board, as well as Chair of its Governance and Compensation Committee. Haskins had also represented the Bank in this lawsuit, from December 2019 until August 2020. Carter Bank maintained, in seeking the protective order, that Haskins had provided the Bank with legal advice regarding this lawsuit. Kendrick contended, on the other hand, that he would depose Haskins only with respect to his service as a Director.

On September 19, 2022, a magistrate judge granted the Bank a protective order that barred Kendrick from deposing Mr. Haskins, pursuant to Rule 26(c) of the Federal Rules

7

of Civil Procedure, without prejudice. *See Kendrick v. Carter Bank & Tr., Inc.*, 4:19-cv-00047 (W.D. Va. Sept. 19, 2022), ECF No. 148 (the "Protective Order"). In so ruling, the magistrate judge relied on two related legal doctrines — called the "apex doctrine" and the "*Shelton* test" — each of which can limit a discovery deposition.[5]

Kendrick objected to the Protective Order, and the magistrate judge's ruling was thus reviewed by the district court. On May 18, 2023, the court agreed with the magistrate judge, overruled Kendrick's objection, and affirmed the Protective Order. *See Kendrick v. Carter Bank & Tr., Inc.*, No. 4:19-cv-00047, 23 WL 3550112 (W.D. Va. May 18, 2023), ECF No. 205. The court therein emphasized that Kendrick had not exhausted several other available and reasonable discovery steps, such as deposing other Board members, before seeking to depose Haskins. Although the magistrate judge had agreed with Kendrick that Haskins's potential knowledge of the relevant facts might have been useful, the district court ruled that Kendrick had failed to show that there were no other available sources of the discovery being sought. As a result, the court affirmed the Protective Order. Although the Protective Order was entered without prejudice, Kendrick failed to pursue the issue

---

[5] The "apex doctrine" has been cited for supporting a "rebuttable presumption that the deposition of a high-ranking corporate executive . . . constitutes good cause for a protective order as an annoyance or undue burden within the meaning of Federal Rule of Civil Procedure 26(c)(1)." *See Trs. of Purdue Univ. v. Wolfspeed, Inc.*, No. 1:21-cv-840, 2023 WL 4564558, at *4 (M.D.N.C. July 17, 2023) (citing *Performance Sales & Mktg. LLC v. Lowe's Cos., Inc.*, No. 5:07-cv-140, 2012 WL 4061680, at *4 (W.D.N.C. Sept. 14, 2012)) (cleaned up). The "*Shelton* test" is a three-pronged test that a party must satisfy in order to depose an opposing party's attorney. *See Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986).

8

again before exhausting his deposition limitations, the close of discovery, and the summary judgment briefing.

### b.

The second discovery issue arose on August 21, 2023, after the summary judgment briefing had been completed, when Kendrick filed an untimely "Notice of Supplemental Facts." That Notice related to other litigation involving Carter Bank. Because the summary judgment briefing had concluded and because Kendrick had failed to seek or obtain leave from the district court to file his Supplemental Facts — in violation of the Local Rules — the Bank moved to strike Kendrick's Notice. The motion to strike was then briefed and argued. Because Kendrick had failed to obtain court approval for the filing of his Notice, the court granted the motion to strike. Kendrick's Supplemental Facts were thus excluded from the summary judgment record. As the court explained, however, even if the contents thereof had been considered, its summary judgment rulings would not have been impacted. *See* SJ Ruling at 32.

### 2.

On November 9, 2022, Carter Bank moved for summary judgment on Kendrick's claims of disparate treatment, hostile work environment, and retaliation. That motion was briefed by the parties, and a hearing — involving an oral argument — was conducted by the district court on August 10, 2023. On March 29, 2024, the court awarded summary

9

judgment to the Bank, after assessing and rejecting each of Kendrick's claims.[6]  *See* SJ Ruling.  Kendrick has filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. §1291.

## II.

The applicable standard of review for discovery rulings is generally an abuse of discretion.  *See Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).  More specifically, we assess a Rule 26(c) protective order of a district court for abuse of discretion, and such an abuse will only occur when a denial of discovery caused substantial prejudice.  *See Nicholas v. Wyndham Intern., Inc.*, 373 F.3d 537, 542 (4th Cir. 2004) (citing *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, (4th Cir. 1992) (en banc)).

We have identified the standard of review for a district court's ruling on a motion to strike as an abuse of discretion.  *See United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 324 (4th Cir. 2018) (concluding that motions to strike pleadings are reviewed for abuse of discretion); *Jennings v. Univ. of N.C.*, 482 F.3d 686, 702 (4th Cir. 2007) (en banc) (concluding that "district court did not abuse its discretion in *denying* [motions to strike]" (emphasis added)).  Our sister circuits have also applied an abuse of discretion standard to similar motions.  *See, e.g., Perez v. Staples Contract & Comm. LLC*, 31 F.4th 560, 568 (7th

---

[6] The court construed the operative amended complaint as alleging three claims, that is, disparate treatment, hostile work environment, and retaliation.  The SJ Ruling thus assessed and rejected each of those claims.

Cir. 2022) ("Abuse of discretion is the standard of review for . . . [a] motion to supplement the record[.]"); *E.E.O.C. v. Peabody Western Coal Co.*, 773 F.3d 977, 982 (9th Cir. 2014) (same); *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 854 (5th Cir. 2003) (same). Consistent therewith, we are satisfied that the abuse of discretion standard applies to this contention of error.

On the other hand, we assess de novo a district court's award of a summary judgment. *See Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 62 (4th Cir. 2023) (quoting *Bright v. Coastal Lumber Co.*, 962 F.2d 365, 368 (4th Cir. 1992)). And an award of summary judgment is only appropriate when, after viewing the facts in the light most favorable to the nonmoving party, the moving party has established that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Massaro v. Fairfax Cnty.*, 95 F.4th 895, 901 (4th Cir. 2024) (quoting Fed. R. Civ. P. 56(a)).

## III.

### A.

Before resolving the summary judgment issues pursued here, we will resolve the discovery issues. During the discovery proceedings, Carter Bank sought a protective order barring Kendrick's lawyer from taking the deposition of Haskins. Although the protective order was entered "without prejudice," which gave Kendrick an opportunity to revisit the issue, he made no effort in that regard. Under the applicable Rules and the explicit ruling

11

of the magistrate judge, Kendrick was only entitled to take 11 discovery depositions.[7] But he took all 11 of those authorized depositions and failed to reserve one for Haskins. Furthermore, Kendrick never returned to court to seek further relief. In these circumstances, the district court did not abuse its discretion in affirming the Protective Order entered by the magistrate judge.

With respect to Kendrick's second discovery contention, he had filed his "Notice of Supplemental Facts" in an untimely manner, and he had failed to either seek or obtain leave of court to file it out-of-time. Local Rule 11(c)(1) of the Western District of Virginia directly supports the district court's ruling to strike the submission. That is, after briefing has concluded, "[n]o other briefs (including letter briefs) are to be submitted without first obtaining leave of court." *See* W.D. Va. Civ. R. 11(c)(1). The court therefore did not abuse its discretion in striking the Notice. The decision to exclude the untimely submission was well within the court's discretion, and we reject this discovery contention as well.

B.

Having resolved the discovery contentions, we turn to the merits of the SJ Ruling. That ruling disposed of the three claims identified, that is: (1) Kendrick's disparate treatment claim; (2) his hostile work environment claim; and (3) his retaliation claim. We will evaluate those rulings in turn.

---

[7] Pursuant to Rule 30 of the Federal Rules of Civil Procedure, a party is not entitled to take more than 10 depositions without leave of court. *See* Fed. R. Civ. P. 30(a)(2)(A)(i). On September 26, 2022, the magistrate judge authorized Kendrick to conduct 11 depositions. *See Kendrick v. Carter Bank & Tr.*, 4:19-cv-00047 (W.D. Va. Sept. 26, 2022), ECF No. 152. And the district court affirmed that ruling. *See Kendrick v. Carter Bank & Tr.*, 4:19-cv-00047 (W.D. Va. May 18, 2023), ECF No. 205.

12

1.

With respect to Kendrick's disparate treatment claim, the SJ Ruling assessed the aforementioned alleged comments of high-ranking Carter Bank officials that Kendrick had complained of. After assessing each of those comments, the court determined that they did not constitute direct evidence of disparate treatment under the ADEA.

The SJ Ruling then considered Kendrick's contention concerning his alleged circumstantial evidence of disparate treatment — specifically that he was not accorded performance reviews by the Bank in 2019 and 2020, plus his termination by the Bank in 2020. Applying the *McDonnell Douglas* burden-shifting framework, the court ruled that Kendrick had failed to satisfy step one thereof by making a *prima facie* case of disparate treatment.

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff must first satisfy step one, by showing that

> (1) he is a member of a protected class, (2) he suffered an adverse employment action (such as discharge), (3) he was performing his job duties at a level that met the employer's legitimate expectations at the time of the adverse employment action, and (4) his position remained open or was filled by a similarly qualified applicant outside the protected class.

*See Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (quoting *Baqir v. Prinicipi*, 434 F.3d 733, 742 (4th Cir. 2006)). Importantly, if the plaintiff fails to make the requisite *prima facie* showing, the *McDonnell Douglas* framework ends at step one. *Id*. (citing *King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir. 2003)).

In assessing whether the Bank's lack of performance reviews of Kendrick in 2019 and 2020 constituted disparate treatment, the SJ Ruling accepted that he was a member of

13

a protected class, that is, he was over 40 years. *See* 29 U.S.C. § 631(a) (actions under this chapter are "limited to individuals who are at least 40 years of age."). The question was thus whether the lack of performance reviews in those years constituted an adverse employment action as to Kendrick. In that regard, the court concluded that

> Kendrick has provided *no* evidence, not even a mere scintilla, of the adverse effect the lack of performance reviews had on the terms and conditions of his employment.

*See* SJ Ruling at 9 (emphasis in the original). As a result, the court ruled that Kendrick had failed to make a *prima facie* case of disparate treatment regarding the lack of performance reviews. That is, he could not show he had suffered an adverse employment action in that regard.

Alternatively, the district court assumed that Kendrick's termination constituted an adverse employment action. And in that event, the court ruled that there was insufficient evidence that Kendrick was performing satisfactorily at the time of his termination. The court identified several statements of Bank officials regarding Kendrick's unsatisfactory performance. Strikingly, the court accurately emphasized that "Kendrick *concedes* that the dissemination of confidential documents in violation of the Bank's policies is a terminable offense." *Id*. at 11–12 (emphasis in the original). As a result, the court could not find that Kendrick was performing in a satisfactory manner when he was terminated in 2020.

In any event, the SJ Ruling was that, even if Kendrick had made a *prima facie* showing of disparate treatment concerning his termination, the Bank possessed a legitimate, non-discriminatory reason for Kendrick's termination. That is, Kendrick's illegal and improper involvement in the publication of confidential Bank and customer

14

information on PACER. Having carefully assessed the issues de novo, we agree with the district court, and the SJ Ruling on the disparate treatment claim must be sustained.

2.

Turning next to Kendrick's hostile work environment claim, the SJ Ruling again assessed the above-recited comments as evidence of disparate treatment. To succeed on a hostile work environment claim, a plaintiff must show that (1) he experienced unwelcome harassment; (2) the harassment was based on his age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on his employer.[8] *See Baqir v. Prinicipi*, 434 F.3d 733, 745–46 (4th Cir. 2006).

Although the court acknowledged that those comments were unwelcome and implicated Kendrick's age, it nevertheless concluded that he could not prevail on the hostile work environment claim. First, the court explained that Kendrick had failed to show that the alleged harassment was "sufficiently severe or pervasive enough to alter the conditions of [his] employment and create an abusive atmosphere." *See* SJ Ruling, at 19–20 (citing *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (en banc)). Next, the court emphasized that Kendrick had not presented other examples of age-based harassment. As a result, the comments Kendrick relied on were isolated and offhand, and

---

[8] Our Court does not appear to have recognized that there is a cause of action for hostile work environment under the ADEA. We have assumed, however, without specifically deciding, that a hostile work environment claim is cognizable under the ADEA for a plaintiff aged 40 and older. *See Burns v. AAF-McQuay, Inc.*, 166 F.3d 292, 294 (4th Cir. 1999); *see also Baqir v. Prinicipi*, 434 F.3d 733, 746 n.14 (4th Cir. 2006); *Causey v. Balog*, 162 F.3d 795, 801 n.2 (4th Cir. 1998).

they did not rise to the level of altering his employment conditions. Having assessed this aspect of the district court's analysis de novo, the SJ Ruling that Kendrick failed to establish a hostile work environment based on age must also be sustained.

3.

Turning to Kendrick's retaliation claim, the SJ Ruling evaluated whether Kendrick's termination by the Bank in 2020 was an act of retaliation for his filing of EEOC claims and this lawsuit. And the ADEA plainly prohibits an employer from retaliating against an employee for engaging in protected activity. *See* 29 U.S.C. § 623(d). An employee is entitled to prove retaliation by direct evidence of retaliatory animus, or through the *McDonnell Douglas* burden shifting framework. *See Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022). When the employee proceeds under the *McDonnell Douglas* framework, he "must first establish a *prima facie* case of retaliation by showing that (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal nexus existed between the protected activity and the adverse action." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 902 (4th Cir. 2024) (citing *Foster v. Univ. of Maryland-E Shore*, 787 F.3d 243, 250 (4th Cir. 2015).

The SJ Ruling accepted the proposition that Kendrick suffered an adverse employment action when he was terminated by the Bank in May 2020. And it recognized that his filing of this age discrimination lawsuit against Carter Bank was a protected activity. The bottom-line question, however, was whether Kendrick was engaging in protected activity when he removed the confidential Bank and customer information from

16

the Bank, gave those confidential Bank records to his lawyer, and thus made them available to the public on PACER.

In that regard, the court properly ruled that Kendrick's disclosure of non-public personal information regarding Carter Bank's customers violated a controlling federal statute, that is, § 6802(a) of Title 15 of the United States Code. *See* 15 U.S.C. § 6802(a) ("[A] financial institution may not directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with [this provision]."). In these circumstances, Kendrick's disclosure on PACER of confidential Bank and customer information was not a protected activity. And that conduct also violated the Bank's Code of Conduct, which also justified Kendrick's termination. *See* SJ Ruling at 28.

The SJ Ruling also ruled that Kendrick failed to show a causal nexus between his termination and his alleged protected activity. That is, the court saw no temporal proximity between the filing of Kendrick's complaint in this case and his termination by the Bank, because nearly six months had lapsed between those events. And the court emphasized that Kendrick had not presented any evidence that his termination was actually motivated by retaliatory animus, just conclusory statements.

The SJ Ruling properly emphasized that Carter Bank had a legitimate, non-discriminatory reason for Kendrick's termination. That is, his disclosure to his lawyer and on PACER of confidential Bank and customer information. As a result, Kendrick could not make a *prima facie* case of age-based retaliation against Carter Bank, and the court

17

awarded summary judgment to the Bank on that claim as well.  Having assessed that aspect of the SJ Ruling de novo, the district court's rejection of Kendrick's retaliation claim must also be sustained.

IV.

Pursuant to the foregoing, we reject each of Kendrick's contentions on appeal and affirm the judgment of the district court.

*AFFIRMED*